WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jay Rumpf, | No. CV-17-00111-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Prog Leasing LLC, et al., | |
| Defendants. | |

Pending before the Court is the Motion to Compel Arbitration, (Doc. 13), of Defendant Prog Leasing LLC ("Prog Leasing"). Also pending before the Court is Plaintiff Jay Rumpf's ("Rumpf") Motion for Leave to File a Sur-Reply, (Doc. 28). For the following reasons, the Court grants Defendant's motion and denies Plaintiff's motion.

## BACKGROUND

Rumpf filed suit in this Court on January 13, 2017, alleging that Prog Leasing violated his rights under the Telephone Consumer Protection Act ("TCPA"). (Doc. 1 at 2.) TCPA prohibits, among other things, the making of telephone calls using "any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a . . . cellular telephone service" and the initiation of "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1).

The Complaint alleges that "[i]n the last four years, Defendant placed calls to Plaintiff's cellular telephone number." (Doc. 1 at 3.) Some of these calls involved

prerecorded messages, and others involved a live representative. (Doc. 1 at 3.) The Complaint further alleges that "Plaintiff does not have business with Defendant and never provided Defendant his cellular telephone number or prior express consent to call or autodial it." (Doc. 1 at 3.)

Prog Leasing responded with the instant Motion. In support of the Motion, Prog Leasing presents a declaration from Trevor Thatcher, the Vice-President of Operations for Prog Leasing, and a lease (the "Lease"). (Doc. 14.) From these come the following relevant facts: Rumpf's wife, Treva Vasquez, entered into a Lease for a queen bed set with Prog Leasing in January 2016. (Doc. 14 at 5, 8.) This Lease contained an arbitration provision, which stated in relevant part that "you and we agree that either party may elect to arbitrate or require arbitration of any Claim under this Arbitration Provision." (Doc. 14 at 5, 9–10.) And finally, Rumpf had called Prog Leasing to discuss the Lease in June 2016. (Doc. 14 at 6.) Prog Leasing asserts that Rumpf is bound by the arbitration provision as a direct beneficiary of the Lease, and that the arbitration provision covers the dispute under the TCPA.

Further briefing on the Motion by each party elicited more evidence. Rumpf presents an affidavit in which he admits that he is married to Vasquez and was married to her when she entered into the Lease, although he asserts that he had no knowledge of the Lease at the time. (Doc. 24-1 at 2.) He also concedes that he used the leased bed "[b]eginning in late January 2016 through approximately April of 2016." (Doc. 24-1 at 2.) He admits calling Prog Leasing in June 2016, but states that at that point he was not aware that his wife had entered into the Lease and only became aware of this during the call. (Doc. 24-1 at 2.) He states that he only called Prog Leasing to inquire about purchasing a bed for his child and that he never "sought any benefit under the Lease, agreed to be a party to the Lease, sought to enforce any of its terms or otherwise [had] any involvement with the Lease." (Doc. 24-1 at 2.)

In turn, Prog Leasing attached to their reply, (Doc. 27), a second declaration by Trevor Thatcher in which Thatcher testifies to his knowledge of the contents of the June

2016 phone conversation. (Doc. 27-1 at 1–4.) Attached to this declaration as an exhibit is a transcript of the June 2016 phone conversation. (Doc. 27-1 at 17–19.) This transcript indicates that Rumpf told Prog Leasing, among other things, that "[w]e already have a Queen size that we have been paying on" and that the payments had been made from a joint bank account. (Doc. 27-1 at 18–19.)

**DISCUSSION**

**I.     Legal Standard**

    **a.     Arbitration Generally**

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2; *see, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113–19 (2001) (holding that FAA applies to employment contracts except those of transportation workers) (citing 9 U.S.C. §§ 1–2); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994), *cert. dismissed*, 515 U.S. 1187 (1995). "Although [a] contract provides that [state] law will govern the contract's construction, the scope of the arbitration clause is governed by federal law." *Tracer Research Corp*, 42 F.3d at 1294 (citing *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir. 1983)); *see Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (holding that FAA "not only placed arbitration agreements on equal footing with other contracts, but established . . . a federal common law of arbitrability which preempts state law"); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("Federal substantive law governs the question of arbitrability."); *Chiron Corp.*, 207 F.3d at 1130–31 (holding that "district court correctly found that the federal law of arbitrability under the FAA governs the allocation of authority between courts and arbitrators" despite arbitration agreement's choice-of-law provision).[1]

---

[1] However, though "'courts may not invalidate arbitration agreements under state laws

"Notwithstanding the federal policy favoring it, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Tracer Research Corp.*, 42 F.3d at 1294 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); *see French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 908 (9th Cir. 1986). Where the arbitrability of a dispute is in question, a court must look to the terms of the contract. *See Chiron Corp.*, 207 F.3d at 1130. "'Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Simula*, 175 F.3d at 719 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)); *see French*, 784 F.2d at 908.

However, a court "cannot expand the parties' agreement to arbitrate in order to achieve greater efficiency [and] the [FAA] 'requires piecemeal resolution when necessary to give effect to an arbitration agreement.'" *Tracer Research Corp.*, 42 F.3d at 1294 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25) (emphasis in original). "[T]he judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate[.]" *United Steelworkers*, 363 U.S. at 582. "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130 (citing *Simula*, 175 F.3d at 719–20; *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991)); *see Simula*, 175 F.3d at 720 (stating that "the district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms") (citing *Howard Elec. & Mech. v. Briscoe Co.*, 754 F.2d 847, 849 (9th Cir. 1985)).

### b. Motions to Compel Arbitration

There is no Ninth Circuit case law directly on point as to the standard of review a

---

applicable only to arbitration provisions,' general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Circuit City Stores*, 279 F.3d at 892 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)) (emphasis in original).

- 4 -

district court should use in evaluating a motion to compel arbitration. *See Scudieri v. Chapman Chevrolet Chandler, LLC*, No. 2:16-cv-01988 JWS, 2016 WL 6997164, at *1 (D. Ariz. Oct. 25, 2016). However, other courts have recognized that either Rule 12(b)(6) or Rule 56 provides the proper standard of review, depending on the circumstances. *Id.* "'[W]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint, the [Federal Arbitration Act] would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery.'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773–74 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 481–82 (E.D. Pa. 2011)). Otherwise, the "standard the court applies in making the arbitrability determination is similar to the summary judgment standard, and the court should review the record to determine if the party opposing arbitration has raised any triable issue of fact." *The O.N. Equity Sales Co. v. Thiers*, 590 F. Supp. 2d 1208, 1211 (D. Ariz. 2008). "The Court does not require an evidentiary hearing when the underlying factual circumstances which are relevant to the court's determination of arbitrability are undisputed." *Id.* If, however, the party opposing arbitration

> comes forth with sufficient "reliable evidence" to raise a fact question going to the validity of the arbitration agreement . . . the court should deny the motion to compel, allow the parties "'the opportunity to conduct limited discovery on the narrow issue concerning the validity' of the arbitration agreement," and then "entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard."

*Scudieri*, 2016 WL 6997164, at *1 (footnotes omitted).

## II. Analysis

### a. Rumpf's Motion for Leave to File a Sur-Reply is Denied.

Rumpf seeks leave to file a sur-reply, contending that Prog Leasing's reply unfairly introduces new legal arguments and new evidence to which Rumpf is entitled to respond. (Doc. 28 at 2–3.) "[L]egal arguments raised for the first time in reply are

deemed waived." *Save the Peaks Coal. v. U.S. Forest Serv.*, No. CV 09-8163-PCT-MHM, 2010 WL 3800896, at *2 (D. Ariz. Sept. 22, 2010) (citing *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)). Where new evidence is presented in a reply brief, a "district court should not consider the new evidence without giving . . . an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (quoting *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)). "Each time a moving party is permitted to raise new arguments or present new evidence in reply, absent the Court granting leave for the non-moving party to file a sur-reply brief, the non-moving party is essentially deprived of the opportunity to address these new contentions." *Save the Peaks Coal.*, 2010 WL 3800896, at *2.

Here, however, Prog Leasing did not unfairly raise any new arguments or present new evidence in its reply brief. Rumpf contends that the "theory that Plaintiff's claims allegedly arise out of the document containing the arbitration clause" only appears in Prog Leasing's reply brief at pages 6 through 8, and not at all in its opening brief. (Doc. 28 at 2.) This is incorrect. Prog Leasing did make this argument in its opening brief. (Doc. 13 at 7–9.) That Rumpf failed to respond to the argument in his response does not entitle him to a sur-reply to address it now.

Moreover, while Prog Leasing attached a second declaration and a transcript to its reply brief, that evidence was presented in reply to Rumpf's own arguments and declaration made in response to the original motion. It can hardly be said that Rumpf had no opportunity to respond to Prog Leasing's evidence that Rumpf knew of the Lease, when such evidence was presented with the initial motion, (Doc. 14 at 6), and Rumpf specifically responded to it, (Doc. 24-1 at 2). "A court will not strike affidavits supporting a reply when they are filed simultaneously with the reply and do not prejudice the moving party." *Ironworkers Dist. Council of Pac. Nw. v. George Sollit Corp.*, No. C01-1668C, 2002 WL 31545972, at *5 (W.D. Wash. Sept. 4, 2002); *see also Key v. Shelby Cty.*, 551 F. App'x 262, 264 (6th Cir. 2014) (upholding district court's denial of motion for leave to file sur-reply when defendant "filed reply affidavits that merely

1 responded to [plaintiff's] arguments presented in her response brief"). At any event, the Court allowed both parties to file simultaneous briefing on the issues relevant to the Motion to Compel Arbitration in lieu of a sur-reply.

Accordingly, Rumpf's Motion for Leave to File a Sur-Reply is denied, and the Court will consider all arguments and evidence presented in the parties' briefings, supplemental or otherwise.

### b. The Dispute Must Be Arbitrated.

#### 1. The Lease Contains a Valid Arbitration Provision.

The Federal Arbitration Act states in relevant part that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Lease here contains such a written provision. (Doc. 14 at 9–11.) Neither party contends otherwise; nor does either party raise any grounds for the revocation of the Lease. Therefore, to the extent that Rumpf is bound by the arbitration provision and the claim he raises here is within the scope of the arbitration provision, he must arbitrate his claim. *See United Steelworkers*, 363 U.S. at 582 ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

#### 2. Rumpf Is Bound by the Lease's Arbitration Provision.

Rumpf did not sign the Lease. Nevertheless, he is bound by his wife's signature on the Lease. Rumpf and Vasquez were married on December 31, 2015. (Doc. 24-1 at 2.) The Lease was entered into four days later, on January 4, 2016. (Doc. 24-1 at 2.) In Arizona, subject to certain exceptions, "[a]ll property acquired by either husband or wife during the marriage is the community property of the husband and wife. . . ." A.R.S. § 25-211. This creates a "legal presumption that all property acquired during marriage is community property." *In re Marriage of Foster*, 240 Ariz. 99, 101, 376 P.3d 702, 704 (Ct. App. 2016). Subject to certain exceptions not relevant here, "[e]ither spouse

separately may acquire, manage, control or dispose of community property or bind the community." A.R.S. § 25-214(C). By signing the Lease, therefore, Vasquez bound herself, the marital community and Rumpf through the marital community to the provisions of the Lease, including the arbitration provision.

The cases to the contrary that Rumpf cites are not persuasive. In *Ruesga v. Kindred Nursing Centers, L.L.C.*, the Arizona Court of Appeals reaffirmed that "marital relation *alone* does not make one spouse an agent for the other." 215 Ariz. 589, 598, 161 P.3d 1253, 1262 (Ct. App. 2007). But that case did not deal with community property at all; rather, it dealt with medical documents that a wife signed on behalf of her incapacitated husband upon his admission into a nursing home. *Id.* at 591–92. *First Interstate Bank of Arizona, N.A. v. Tatum & Bell Center Associates* did hold that a non-signatory spouse could not be bound to a guaranty signed by the other spouse simply because the marital community had benefited. 170 Ariz. 99, 104, 821 P.2d 1384, 1389 (Ct. App. 1991). But, as Rumpf concedes, that case involved a straightforward application of A.R.S. § 25-214(C), which specifically requires the signature of both spouses in "[a]ny transaction of guaranty, indemnity or suretyship." A.R.S. § 25-214(C)(2). The Texas Court of Appeals case that Rumpf cites is likewise inapplicable. In that case, the court found that a non-signatory spouse could not be bound to an arbitration clause signed by her husband. *St. Clair v. Brooke Franchise Corp.*, No. 2-06-216-CV, 2007 WL 1095554, at *5–7 (Tex. Ct. App. Apr. 12, 2007). But this is consistent with the Texas community property statute, which sharply limits the liability that one spouse can unilaterally impose on the other spouse and the marital community. *See* Tex. Family Code Ann. § 3.201.

Arizona community property law, on the other hand, is clear that, subject to exceptions not applicable here, "[e]ither spouse separately may . . . bind the community." A.R.S. § 25-214(C). Rumpf is therefore bound, by his wife's signature, to the arbitration provision of the Lease.

/ / /

### 3. The Arbitration Provision Encompasses the Instant Dispute.

The Lease's arbitration provision provides that "either party may elect to arbitrate or require arbitration of any Claim under this Arbitration Provision." (Doc. 14 at 9.) "Claim," in turn,

> means any claim, dispute or controversy between you and us (including any Related Party) that arises from or relates in any way to this Lease or the Property (including any amendment, modification or extension of this Lease); any prior Lease between you and us and/or the property subject to such prior Lease; any of our marketing, advertising, solicitations and conduct relating to this Lease, the Property and/or a prior Lease and related property; our collection of any amounts you owe; or our disclosure of or failure to protect any information about you. "Claim" is to be given the broadest reasonable meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims, and claims based on constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud or other intentional wrongs) and equity. . . .

(Doc. 14 at 10.)

Prog Leasing asserts that it only contacted Rumpf after Rumpf contacted Prog Leasing in June 2016, six months after the Lease was signed, (Doc. 13 at 4); and presents evidence to that effect, (Doc. 27-1 at 3). Prog Leasing further asserts that any calls that were made were for the purpose of payment collection. (Doc. 27-1 at 3.) Rumpf does not contest this, and there is no evidence that Prog Leasing contacted Rumpf prior to the signing of the Lease or for any purpose besides payment collection.[2]

The language of the arbitration provision covers Prog Leasing's "collection of any amounts" a customer owes. (Doc. 14 at 10.) Other courts, faced with similar facts, have granted motions to compel arbitration of TCPA claims. *See, e.g.*, *Brown v. DIRECTV, LLC*, No. CV 12-08382 DMG (Ex), 2013 WL 3273811, at \*6 (C.D. Cal. June 26, 2013) ("Brown's TCPA claim alleges that the attempts to collect were illegal. The ability to collect on an unpaid contract is 'related to' that contract and, here, that is all that is

---

[2] Indeed, Rumpf's argument that the TCPA claims do not arise from the Lease is entirely based on his contention that the Lease did not create a relationship between him and Prog Leasing. (Doc. 24 at 7.) That argument is addressed in the estoppel discussion.

required for the claims against DIRECTV to fall within the scope of the arbitration clause."). Here, likewise, Rumpf alleges that Prog Leasing made phone calls which violated the TCPA. The undisputed evidence shows that those phone calls were related to the Lease and thus Rumpf's TCPA claims fall within the arbitration provision.

## CONCLUSION

The arbitration provision at issue here binds Rumpf and covers his TCPA claims. Rumpf must therefore pursue his claims, if he desires, in individual arbitration as contemplated in the Lease.

**IT IS THEREFORE ORDERED:**

1. Defendant's Motion to Compel Arbitration, (Doc. 13), is **GRANTED**.

2. Plaintiff's Motion for Leave to File a Sur-Reply, (Doc. 28), is **DENIED**.

3. The parties are directed to submit this matter to arbitration consistent with the terms of their agreement and the provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

4. Upon completion of the arbitration proceedings, the parties are directed to comply with the provisions of 9 U.S.C. §§ 9–13, as applicable.

5. This action is **STAYED** pursuant to 9 U.S.C. § 3.

6. The parties shall file a joint status report concerning their arbitration on or before **August 28, 2017**, and every **90 days thereafter** until the stay has been lifted.

Dated this 31st day of May, 2017.

*G. Murray Snow*
Honorable G. Murray Snow
United States District Judge